**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kathryn G Barkowski,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-16-02189-PHX-DLR<br><br>**ORDER** |

Plaintiff Kathryn Barkowski applied for Social Security Disability Insurance benefits in February 2012, alleging disability beginning July 29, 2010. After state agency denials, Barkowski appeared for a hearing before an administrative law judge ("ALJ"). A vocational expert ("VE") also was present and testified. Following the hearing, the ALJ issued a written decision finding that Barkowski is not disabled within the meaning of the Social Security Act ("SSA"). The ALJ's decision became the agency's final decision after the Social Security Administration Appeals Council denied Barkowski's request for review. Barkowski now seeks judicial review of that decision. For the following reasons, the decision of the Commissioner of Social Security Administration is reversed and this matter remanded for further proceedings.

## **BACKGROUND**

To determine whether a claimant is disabled for purposes of the SSA, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of

proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. If so, the claimant is not disabled and the inquiry ends. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. If not, the claimant is not disabled and the inquiry ends. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. If so, the claimant is not disabled and the inquiry ends. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. If so, the claimant is not disabled. If not, the claimant is disabled.

At step one, the ALJ determined that Barkowski meets the insured status requirements of the SSA through December 31, 2015, and has not engaged in substantial gainful activity since her alleged disability onset date. (A.R. 17.) The ALJ found at step two that Barkowski's rheumatoid arthritis, degenerative disc disease of the lumbar and cervical spine status post cervical fusion and hardware removal, peripheral neuropathy, right shoulder tendinitis, carpal tunnel of the right wrist, fibromyalgia, hypertension, and obesity are severe impairments, but concluded at step three that they do not meet or medically equal the severity of a listed impairment. (*Id.* at 17-19.) At step four, the ALJ found that Barkowski has the RFC to perform:

> less than the full range of light work . . . . Specifically, [Barkowski] could lift and/or carry ten pounds frequently, twenty pounds occasionally; she could sit, stand and/or walk for six hours out of an eight-hour workday; she could occasionally climb ladders, ropes and scaffolds and crawl; she could frequently climb ramps and stairs, balance, stoop, crouch, kneel, handle and finger with the right upper extremity; and she is to avoid concentrated exposure to

> unprotected heights and hazardous machinery except motor vehicles.

(*Id.* at 19.) Based on this RFC, the ALJ found that Barkowski is unable to perform her past relevant work. (*Id.* at 26.) At step five, however, after considering Barkowski's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.* at 26.) Accordingly, the ALJ found that Barkowski is not disabled within the meaning of the SSA. (*Id.* at 27-28.)

## **STANDARD OF REVIEW**

It is not the district court's role to review the ALJ's decision de novo or otherwise determine whether the claimant is disabled. Rather, the court is limited to reviewing the ALJ's decision to determine whether it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court, however, "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (internal quotations and citation omitted). Nor may the court "affirm the ALJ on a ground upon which he did not rely." *Id.*

## **DISCUSSION**

Barkowski argues that the ALJ erred by discounting her testimony concerning the severity and effects of her symptoms, and by assigning little weight to the opinions of her treating physicians, Drs. Ravi Bajpai and Jonathan Landsman. (Doc. 13.)

**I. Symptom Testimony**

Barkowski alleges disability due to rheumatoid arthritis in the hands and feet, neck

pain, Raynaud's disease, and depression. (A.R. 213.) She testified that she started having memory problems after neck surgeries in 2012 and 2013, she experiences pain in her right arm, neck, and shoulder, her arthritis causes her hands to swell, and she has been falling lately because of problems with her right foot. (*Id.* at 46-60.) In function reports from April and October 2012, Barkowski complained of neck and lower back pain that made it difficult to lift or sit for long periods of time, sensitivity to cold temperatures in her hands and feet, restless sleep due to pain, drowsiness from medications, and difficulty remembering and concentrating. (*Id.* at 221-229, 239-247.)

In evaluating a claimant's symptom testimony, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir.2002)). Indeed, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.* at 1016.

Here, the ALJ found that Barkowski's medically determinable impairments reasonably could be expected to cause her alleged symptoms, but concluded that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (A.R. 21.) The ALJ offered three reasons for this conclusion: (1) Barkowski's daily activities "reflect a significant functional capacity and not an individual unable to sustain regular and continuing work;" (2) Barkowski "has not generally received the type of medical treatment one would expect for a totally disabled

individual;" and (3) her "alleged loss of function is not supported by objective medical findings." (*Id.* at 20-21.) The ALJ's rationale does not comport with the clear and convincing reasons standard.

First, the ALJ's finding that Barkowski's daily activities are inconsistent with the alleged severity of her symptoms is unconvincing and unsupported. For example, the ALJ cites the fact that Barkowski "lives with her husband" and "has a small dog." (A.R. at 20.) The Court cannot conceive of a situation in which cohabitating with another person or with a small pet can conflict with allegations of disabling medical impairments. Moreover, although Barkowski co-parents a small dog, she reported that her husband cares for it. (*Id.* 222, 240.) The ALJ also noted that Barkowski "does knitting and beading," but ignores that she reported "I can only knit or bead for a few minutes before it aggravates my neck [and] hands." (*Id.* at 20, 225, 243.) Likewise, the ALJ stated that Barkowski "goes shopping" and "shops in stores," but fails to consider that Barkowski does most of her shopping online and goes to the grocery store once per week with her husband. (*Id.* at 20, 61, 225, 242.) Even then, she uses a motorized cart. (*Id.* at 242.) The ALJ noted that Barkowski walks, but ignores that she does so for only 15 minutes before needing to rest. (*Id.* at 20, 61, 244.) He also erroneously states that she "prepares meals," when Barkowski reported that, other than occasionally microwaving something, her husband does all the cooking. (*Id.* at 20, 60, 222, 240.) Further, the ALJ discounts Barkowski's symptom testimony because she admittedly "gets dressed, brushes her teeth, [and] washes her face." (*Id.* at 20.) But "claimants should not be penalized for attempting to lead normal lives." *Garrison*, 759 F.3d at 1016.

The ALJ cites some activities that could, in certain context, indicate a greater level of functioning, but again fails to account for the manner in which Barkowski engaged in them. For example, the ALJ notes that Barkowski went on a two-week cruise, but ignores that she reported lying around and watching movies for most of the trip. (A.R. 20, 65.) The ALJ also highlights that Barkowski reported exercising in the pool, but the ALJ failed to elicit testimony concerning the frequency and manner in which Barkowski

1 did so. (*Id.* at 20.)

Second, although improvement with conservative treatment is a sufficient basis for discrediting a claimant's allegations of disabling symptoms, *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), the ALJ did not adequately explain this finding. He devoted several pages to summarizing the medical record, which he interpreted to show mild to moderate objective findings. But the ALJ did not explain why Barkowski's treatment was conservative. Notably, Barkowski underwent two cervical fusion surgeries, which does not strike this Court as conservative. *See Garrison*, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment.").

Finally, the ALJ discounted Barkowski's testimony because he found it was not supported by objective findings. But "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence."[1] *Lester*, 81 F.3d at 834. For these reasons, the ALJ erred in discounting Barkowski's symptom testimony.

**II. Medical Opinion Evidence**

On May 7, 2012, Dr. Bajpai submitted a work capacity questionnaire in which he opined that Barkowski could lift less than 10 pounds, stand or walk for less than 2 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. (A.R. 318.) He reported that Barkowski would need to alternate between sitting and standing depending on her pain, that she could never climb, kneel, or crawl, and only occasionally balance, stoop, and crouch. (*Id.* at 319.) Dr. Bajpai indicated that Barkowski has moderately severe pain, precipitated by changing weather, movement, and stress. (*Id.* at 231.) He opined that this pain would frequently interfere with Barkowski's attention and concentration,

---

[1] Inconsistency with the medical record is a sufficient basis for rejecting a claimant's allegations of disabling symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ did not find, however, that Barkowski's symptoms were *inconsistent* with the medical record. Instead, he stated that her reported symptoms and limitations were not supported by objective findings.

- 6 -

and her ability to timely complete tasks. (*Id.* at 321-22.) Likewise, Dr. Landsman opined on April 13, 2014 that Barkowski is unable to lift more than 10 pounds, would need to alternate between sitting and standing, cannot walk for sustained distances, and may need to take pain medication while working, which may cause drowsiness. (*Id.* at 712.) His opinion noted that Barkowski "is having difficulty looking up," walking, and "even lifting a gallon of milk." (*Id.*) The ALJ assigned little weight to both of these opinions. (*Id.* at 24-25.)

A treating physician's opinion generally is entitled to deference. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight generally should be given to the opinion of a treating physician than to the opinions of non-treating physicians because treating physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Thus, where a treating physician's opinion is not contradicted by another physician it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it still may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation and citation omitted.)

Here, the opinions of Drs. Bajpai and Landsman were contradicted by state agency reviewers Drs. Ernest Griffith and Michael Keer, as well as consultative examiner Dr. Monte Jones. (A.R. 85-88, 103-05, 341-44.) The ALJ therefore was required to articulate specific and legitimate reasons, supported by substantial evidence, for discounting Barkowski's treating physicians.

Some of the ALJ's articulated reasons for discounting the treating physicians' opinions do not hold water. Specifically, the ALJ stated that he assigned less weight to the treating physicians' opinions because they appeared to be based largely on

Barkowski's subjective complaints and are inconsistent with her reported activities of daily living. (*Id.* at 25.) For reasons already discussed, however, the ALJ mischaracterized Barkowski's daily activities and did not otherwise articulate clear and convincing reasons for discounting her symptom complaints.

Nonetheless, the ALJ gave other legitimate reasons for discounting the treating physicians' opinions. For example, the ALJ discounted the treating physicians' opinions because he found they were inconsistent with the overall objective medical record. (*Id.* at 25.) Barkowski contends that the ALJ's finding lacks specificity because, other than citing to a handful of records, he failed to explain why the records were inconsistent with the treating physicians' opinions. (Doc. 13 at 13-14) But earlier in the decision, the ALJ devoted nearly three pages to summarizing the medical record and explaining why the record, overall, contained only mild to moderate objective findings. (A.R. at 21-23.) Though the ALJ did not repeat this analysis later when he discussed the treating physician's opinions, the Court will not "fault the agency merely for explaining its decision with less than ideal clarity," so long as its "path may reasonably be discerned . . . ." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation and citation omitted). Contrary to Barkowski's argument, the ALJ did more than state his bare conclusions. He laid out a detailed summary of the medical evidence, explained why it showed overall mild to moderate findings, and stated his conclusion that these records were inconsistent with the more restrictive and severe limitations assessed by Drs. Bajpai and Landsman. Though Barkowski advocates for a more favorable view of the medical record, it is the ALJ's rational interpretation that controls.

The ALJ also discounted the treating physicians' opinions because they were inconsistent with other opinions in the record, which the ALJ found to be more consistent with the overall objective medical evidence. (A.R. 23, 25.) "The opinions of non-treating or non-examining physicians may . . . serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The Court therefore

finds that the ALJ did not err in weighing the medical source evidence.

**III. Remedy**

Barkowski argues that the Court should apply the credit-as-true rule to credit her symptom testimony and remand for award of benefits. The credit-as-true rule allows the Court to make a finding of disability when an ALJ fails to provide legally sufficient reasons for rejecting challenged evidence, there are no outstanding issues that must be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled were the evidence in question credited. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The Court need not apply the credit-as-true rule, however, if evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled. *See Garrison*, 759 F.3d at 1021 (9th Cir. 2014).

The Court finds that a remand for further proceedings, rather than for an award of benefits, is appropriate because the record as a whole creates serious doubt that Barkowski is disabled. First, as previously noted, the ALJ reasonably interpreted the medical record as showing only mild to moderate findings. Second, all other medical sources opined to less restrictive limitations than Barkowski's treating physicians. Third, the ALJ erred largely by mischaracterizing Barkowski's daily activities. Further proceedings would serve a useful purpose because it is not clear how predominately Barkowski's daily activities, as mischaracterized by the ALJ, factored into the decision. For this reason, as well, though the Court affirms the ALJ's weighing of the medical source evidence, the ALJ should feel free to reconsider the treating physicians' opinions in light of the daily activities that Barkowski actually engaged in, and with due consideration to the frequency, duration, and manner in which they were performed. It might be that after comparing the medical source opinions to Barkowski's undistorted testimony concerning her activities of daily living, the ALJ determines that the treating physicians are entitled to slightly more weight, even if their opinions do not control. Such findings might, in turn, bear on the ALJ's RFC finding. Accordingly,

**IT IS ORDERED** that the final agency decision is **REVERSED** and this matter **REMANDED** for further proceedings.

Dated this 30th day of September, 2017.

Douglas L. Rayes
United States District Judge